UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TAY LE,

      Petitioner,

    v.

BRIAN ENGLISH,

      Respondent.

CAUSE NO. 3:26cv290 DRL-SJF

## OPINION AND ORDER

Immigration detainee Tay Le filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition, and Mr. Le has advised that he does not intend to file a reply. The petition is ready to be decided.

Mr. Le entered the United States in 1985 as a refugee from Vietnam. On September 12, 2006, he was convicted of aggravated assault in Pennsylvania. On July 21, 2008, an immigration judge ordered him removed to Vietnam. On October 16, 2008, United States Immigration and Customs Enforcement (ICE) released him on an order of supervision. On September 30, 2025, ICE detained him again, and he is currently held at the Miami Correctional Facility.

On March 12, 2026, the respondent represented that the government intends to remove Mr. Le to Vietnam but that it was unlikely that he would be removed within the next 30 days. On March 16, 2026, the respondent represented that the government did not have travel documents from Vietnam.

The respondent first argues that the court lacks subject matter jurisdiction over Mr. Le's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Le ended 18 years ago. *See* 8 U.S.C. §§ 231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] Given his criminal conviction, Mr. Le's detention was authorized by § 1231(a)(6). The Warden likewise relies on this same statute as the basis for his current detention.

---

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic

purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations— are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the

court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 11-14 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 10-11 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[2] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Because Mr. Le has been in detention for longer than six months, the court turns to whether his removal is reasonably foreseeable. To start, the respondent identifies Vietnam as the only country under consideration for removal. In 2008, the government did not remove him immediately following the order of removal but instead released him on an order of supervision. His most recent term of detention now spans seven months. In the petition, Mr. Le also references the historical reluctance of Vietnam to accept individuals who entered the United States before 1995 for removal, though the court is aware that reports of this have been mixed. In certain petitions, repatriation to Vietnam

---

[2] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

for pre-1995 immigrants has seemed to face unique headwinds, notwithstanding a 2020 Memorandum of Understanding between the United States and Vietnam, and in at least one the report has been of greater success. On balance, the court finds that Mr. Le met his preliminary burden of showing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.

To rebut this showing, the respondent represents that the government intends to remove Mr. Le to Vietnam but that the government has not obtained travel documents from Vietnam. This meager showing doesn't demonstrate that Mr. Le's removal is likely to occur within the reasonably foreseeable future. It does not explain why efforts to remove Mr. Le will be successful now when the government did not remove him in 2008 and given Vietnam's history of refusing to repatriate individuals who entered the United States prior to 1995. It also does not adequately explain why travel documents have not yet been obtained after seven months of detention. It does not suggest that the government is in the process of preparing a formal request for travel documents or any basis for the delay in submitting such a request. It does not provide any insight as to when Vietnam might reach a decision once a formal request has been submitted or the likelihood that Vietnam will issue travel documents. It does not rest on the status of repatriation negotiations, or even suggest there are any that merit particular deference. Unlike other petitions, the government remains tight-lipped here about its success in repatriating Vietnamese citizens, *see, e.g., Huynh v. English*, 2026 U.S. Dist. LEXIS 86051, 10-11 (N.D. Ind. Apr. 17, 2026), and the court must rule based on the record before it. In short, the government has not shown a likelihood of Mr. Le's removal in the reasonably

foreseeable future. Therefore, the respondent must release Mr. Le under *Zadvydas*. Efforts to remove him may continue while he returns to supervision, on the same conditions as his last release.

For these reasons, the court:

(1) GRANTS the petition for writ of habeas corpus [1] and ORDERS the respondent to release Tay Le on the same conditions of supervised release that existed before his re-detention and to certify compliance with this order by filing a notice with the court by **May 5, 2026**;

(2) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release; and

(3) ORDERS that any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

SO ORDERED.

May 4, 2026                                    *s/ Damon R. Leichty*
                                               Judge, United States District Court